Like old home week. Next case is St. Jude Medical v. Access Closure, 2012, 1452. Mr. Ray. May it please the Court, good morning, Your Honor. I'd like to focus my argument on the safe harbor issue. There's a very simple reason why I want to focus my argument on that. One, it's an issue that doesn't come up that often in this Court. But two, by virtue of the safe harbor ruling, the patented issue has 13 more years of life. Now, this panel may presume... That's an economic fact, not a legal fact. No, it's just an explanation as to why I want to focus on this particular issue. And I understand that. The law doesn't change depending on how much more time. But here, the case is actually rather simple because of the agreement that we have among the parties on many of the facts and on most of the law. And we agree on enough to decide this case. First of all, you can start off with the fact that patentable distinctiveness has already been resolved and is not before the Court. We agree on that. We also agree that the legal question is pure legal. And there are sufficient facts here that show that the safe harbor argument made in Texarkana, Arkansas, was entirely litigation-induced. There is nothing in the facts that suggests any intent by any patent prosecutor to gain the benefit of the safe harbor provision of 121 of the statute. But if the facts fit the statute, then why does intention matter? You had a restriction requirement. There was an election of Convention 1, Species B. A divisional, another similar restriction requirement, Election of Species B. And now you've got a patent continuation, all from the same series. And you've got an early and non-elected species. So why doesn't the statute apply? Because you never, in your hypothetical that you just proposed... I wasn't hypothesizing. I was reading the facts. Well, it doesn't fit the statute. And first of all, in that scenario you just described, you didn't discuss the examiner's finding of independent and distinct inventions. The independent and distinct inventions that were found in this case were methods and devices, and there was no election. So the facts are not about whether they... What do you mean there was no election? Are you talking about the grandparent or the parent? Well, I now need to use the trial exhibit to explain our family. If I could direct the panel... We know your family. They're very nice people. The family of the patents. Oh, okay. Go ahead. The patents family. It's JA Volume 2, JA 14-514. And I want to make sure that we're talking about the right application. The failure to elect occurred in the 439 because there's devices and methods. So there was no election among the distinct inventions. Okay? The restriction requirement was that there was two inventions and two inventions only. There's not 240 inventions. The species are of a single invention. And if you read the restriction requirement, you will notice that when the examiner finds multiple species, he's saying of a claimed invention. So finding species is in no way a restriction requirement under the statute. There's other statutory defects despite the election problem. One, the 439 was not a divisional. So already we know we're not under the statute. The statute is limited to divisionals. The one minor exception is if it's a continuation from a divisional. What St. Jude is doing is pretending they're under that exception. They are not under that exception for many reasons. Number one, there really is no real divisional in this case. None. Not one. Not even in the grandparent. The grandparent is the restricted application. The parent they're pretending is the divisional. But it didn't carve out a different invention. What makes a divisional a divisional is carving out the non-elected invention. If the parent were truly a divisional, as is required by Amgen, this court's ruling, it would have had to elect methods. It didn't. It pursued devices just like the grandparent. So the parent case is not a divisional. But regardless of that, the parent case received another restriction requirement. And therefore, for the 439 or 498 to get any possibility of protection under 121, those cases would have to be divisionals. Which you can't have. It's impossible. First of all, they concede they're continuations. And you can't have two divisionals and an elected when there's only two inventions. Well, the restriction requirement was between devices and methods, right? Correct. And 138, grandparent, and 130, the parent, elected devices, right? Correct. Claim 9, which is 9 and 10, which is what we're dealing with here, a method, right? Correct. So wasn't that properly the prosecution of the earlier non-elected invention? No, because there's also claims 1 through 8. And 1 through 8 are all devices. So all the claims would have to be methods for it to be a divisional. But it wasn't designated a divisional, which is a violation of another rule. Amgen requires that you check the divisional box to gain the benefit of 121. And you actually treat it like a divisional, meaning you carved out only the non-elected subject matter. They didn't do that either. There's many reasons why it doesn't get safe harbor protection. So it violates the divisional rule. It also wasn't filed as a result of the restriction requirement. Because, first of all, it was filed solely to provoke an interference. All the claims were canceled. And the only claims in the 439 patent were copied from a third-party application. And the application was filed 364 days after the issuance of Lee, the last possible day to provoke an interference. In order to get it proper for an interference, they canceled all other claims. So the only claims were the claims copied in the Lee case and, therefore, were not an election of any kind. And, in fact, the controlling or the only relevant restriction requirement at issue here is the one they deleted from their brief, which is the restriction requirement in the divisional, so-called divisional case. That restriction requirement is the one at issue here. And the 439 application was filed four months before that restriction requirement. The timing of that filing is very indicative that it was not filed as a result of any restriction requirement. And that's another statutory requirement of 121. And this court's Geneva ruling is right on the money to be, as a result of, the claims must have been restricted in the parent case, carved out, and reappear in the divisional. But why aren't the method claims, 7 to 9, I'm sorry, 9 and 10, filed as a result of the earlier restriction between devices which were prosecuted and methods which were not? Well, first of all, you're ignoring the 498, which also has the methods. And the 498 is the reference patent. And the 498 has expired, which has all method claims. So you're still extending the term, even assuming one were allowed to violate consonants, which is what your fact pattern just did. You could have safe harbor, but then you lose it the minute you have methods and devices. But we only have two inventions, and we're talking about three applications, which tells you we've got a problem somewhere. And the problem is virtually everywhere. So no matter how you change the facts, you will violate at least two or three more statutory requirements. It's got to be a divisional. It's got to be filed as a result of. And it violates consonants. Any one of which, if you agree with me on any one of those, the 439 is invalid for double patenting. And the district court erred by thinking that this court somehow said that the reason for filing the application is irrelevant under Bowringer cannot be correct. The court never said that. Those weren't the facts of Bowringer. And obviously the reason for filing the application is directly relevant when you need to comply with statutory language that reads as a result of. As a result of is legalese for why did you file the application? It was filed solely and only to file an interference. I think we're in agreement on that. And that is definitive evidence that it was filed as a result of. And you cannot change these facts. And if the court would go to the joint appendix of St. Jude's trial exhibit, you'll see the family laid out with both restriction requirements. Yes and no. As a result of could relate back to the second divisional, right? The parent divisional. I don't even want to call it a divisional because it didn't act like a divisional. You refer to it as a divisional but the parent case is not a divisional because it elected devices the same as the grandparent. So it didn't behave like a divisional. So you need to check the box as a divisional and you must actually be a divisional and you must elect the non-elected inventions. It didn't do that either. So I don't agree with that hypothetical treating it like a divisional when it really was not. I'd like to save the rest of my time for rebuttal. I will save the time, Mr. Wray. Mr. Iancu. May it please the court. Andre Iancu on behalf of St. Jude Medical. Complex as the safe harbor provision is, and I think we can agree that that's… The safe harbor provision is very clear. It's just that you all have complex… The issues actually come down to the following common basic principle of common sense. The patent office forced the applicant, forced us to elect a certain species of claims. We complied and as a result we canceled, we removed from the application claims to many inventions including claims that are at issue here. They were removed from the original. We're dealing with a 439 patent, right? Yes, Your Honor. Which claims both devices and methods, not just the devices that were seemingly elected in 183 and 130. Correct. And this is very important, Your Honor, and it's the crux of ACI's argument and it is categorically, they are categorically wrong on this issue. I would direct the court's attention to the joint exhibit 18558. 18558 where the restriction requirement was imposed by the patent office. In that restriction requirement, the first imposition was elect between methods and devices. But then the patent office on the very next page said, and I'll quote, And then the patent office goes on to say, and I'll quote because this is very important, And what the applicant did in compliance with that is it had to do, elected group one, species B. And what was the effect of that? And the effect of that is that every other claim, including every other species, was eliminated. And the claims that are at issue here in this case, which did appear there. Picked up the other species. I'm sorry? Picked up the other species. They picked up the other species because they were eliminated. So your argument is you can mix devices and methods down the line. Of course. As long as they were not excluded from the original. As long as they were not included in the original election. Correct, Your Honor. Well, what's included defines what's excluded. That's right. So whatever is not included, the law is crystal clear. Can be included later down. Can be included later on in the same application. That's exactly the holding of Behringer. That's the critical question that we have to decide. Absolutely. And to hold otherwise, it would be to overrule Behringer. Because Behringer is very clear. In Behringer, they elected certain groups, two groups, in the original, plus a bit of another group, but that doesn't matter.  Correct, Your Honor. This is a continuation. Yes. Let me ask you further. Am I correct in thinking that there wasn't a restriction requirement between species? There was a restriction requirement between devices and methods. And then when you elect one invention, if you don't have a generic claim covering all the species, then you have to elect the species. So the restriction requirement was not between the species, was it? That's not true. The restriction requirement, which I just read, was precisely between the species. Is that a restriction requirement or an election of species? The restriction requirement. The restriction requirement is between methods and devices and then also between species. And there's no question that as a result of that, the applicant had to elect just one species and the rest of them had to be eliminated. Here's one way to think about it. Can they write a restriction requirement like that? They did. They did. Obviously. And we have to comply. That's the problem. That's what the purpose of 121 is. Protect the applicant who had to eliminate claims from the original. They had to be eliminated. Those claims that are eliminated to those inventions can be claimed later on. Here's one way to think about it, Your Honor. The restriction requirement was at least six-way. Okay? 1A, 1B, 1C, 2A, 2B, 2C. 1B was elected. There's a restriction requirement between Group 1 and Group 2. And then I see, if one or two are elected, a further election of species is required. An applicant is required to elect a single, exposed species to which the claim shall be restricted if no generic claim is finally held to be allowable. That doesn't sound to me like the basic restriction requirement. But it actually is. It says that they are patentably distinct. And the effect of that, Your Honor, is that whether it's Group 1 or Group 2, the effect is that Species C claims have to be eliminated. It cannot be, Your Honor. It simply cannot be that we forfeit claims to Species C, whether in Group 1 or Group 2. Under their theory, because Group 1B was elected, and all the other claims are eliminated, Group 1C claims can never be claimed again. Or Group 2C claims can never be claimed again. It simply cannot be that we forfeit those claims. Now how about the fact that both method and device claims are in this patent? Right. So that that is not consonant, consistent with the original election of what? Device claims. So that is the precise holding of Behringer. Because claims to the eliminated inventions can be grouped together in future applications. We are consonant in this case. No other application in this family claims Species C claims. None. And that's an agreed upon fact. It is agreed that in this case, the 439 is Species C, and no other patent in the family has Species C. Behringer is crystal clear that you can combine the inventions of eliminated claims in future applications. In other words, a divisional of a divisional. Your Honor. That's what the statute says. No, no. The statute does not say divisional of divisional. That's allowed. But the law is crystal clear that continuations of divisionals are also allowed. Continuations of divisionals are absolutely allowed. That is the holding of simple technologies. Behringer also says that. Amgen, in fact. The Amgen case on which they rely. The Amgen case very specifically says that a continuation of a divisional is allowed. And in fact, the reason that Amgen didn't allow a continuation is because there was no divisional in that case at all. No divisional in Amgen at all. And no matter what they argue about the family in this case, the 130 patent is a divisional of the 183 patent. That cannot be erased. Was the 439 patent filed as a result of the restriction requirement? Yes. The 439 patent was filed absolutely as a result. Here's why. The C species claims had to be eliminated from the original. But for the restriction requirement, species C and these claims would have been prosecuted in the original patent. And they were not because they had to be removed pursuant to the patent office's imposition of the election of species. So it cannot be, Your Honor. So their argument is that because we prosecuted an interference in order to prove up our priority date, we lose safe harbor protection. You lose as a result interpretation. That's their argument. You didn't file as a result. You filed because you wanted to create an interference. Yes. Well, first of all, we don't agree with that. We filed the 439 because we couldn't prosecute those claims in the 183 grandparents. So you're saying that was as a result of the original division. Absolutely. And Behringer actually says that. There's a footnote exactly to this point. And in fact, Behringer has an interference issue there as well. And the court holds in Behringer that the motivation for interference is not relevant to the case at bar. Why? Because what's relevant is the restriction requirement which forced the division out of the claims at issue here. Here's the other problem. It simply cannot be that we have to forego protecting our priority date through interference proceedings in order to maintain our safe harbor protection. The law cannot put the applicant on the horns of this kind of a dilemma. So the motivation to file an application down the stream is not relevant and Behringer makes that point precisely. The other point ACI makes is that the filing of the parent, the 130 application, erases the protection received from the restriction requirement entered in the 183 grandparent application. They rely on the Bristol-Myers case. Just as a procedural matter, they never mentioned this argument in their opening brief. We think it's waived. We didn't get a chance to respond on the papers. The case is not even mentioned there. You say it cannot be that you lose protection under these circumstances, but if you'd filed a divisional of 130 claiming only methods, then you would be cleanly within the restriction requirements, wouldn't you? Section 121. That would also allow us to be within the restriction requirements, but so does the way we did it. That is perfectly okay under Behringer. Combining eliminated claims is okay under Behringer. Even if they're inconsistent on the original division issue? Absolutely. Again, Behringer has that precise finding. In Behringer, the election was 2 and 9 in the original, and then the next application they elected 8 and 10. They combined 8 and 10, those groups in Behringer, and that was allowed. Here's why the continuation works here. It's a continuation of a divisional, and it is perfectly acceptable for continuations of divisionals to have safe harbor protection. The law is settled on that point. What does consonant mean in your understanding of it? What consonant means, pursuant to Behringer and the other cases that are relevant here, is that you do not claim the same group or species that you have claimed before. In this case, the original claims were to 1B and some subspecies. As long as the 439 patent is not to group 1B? It's consonant. It's consonant. That's your view. That's my view, of course. That's our view, and that's the view of the Behringer case. Again, to hold otherwise would be to overrule that. Now, the fact that we have a continuation of the 439 patent, the main point there is that the 130 itself is a divisional, and this is a continuation of a divisional. There is no need to file yet another divisional from that divisional. In the Bristol-Myers case that they rely on to suggest that the next restriction requirement erases the previous one is entirely different from our case. In the Bristol, it's actually polar opposite. In the Bristol-Myers case, this next divisional, the next restriction requirement was different from and inconsistent with the original restriction requirement. In our case, the two restriction requirements are absolutely consistent with each other. They are the same restriction requirements. So with that in mind, the same elections and restrictions had to be made at that point. They are absolutely consistent. In other words, it can be that if the PTO repeats a restriction requirement, then the original restriction requirement is erased and the applicant has no safe harbor provision. But if on the other hand, the PTO is silent as to the restriction requirement in the second one, then the original still stands. Their argument is that the repetition of an identical restriction requirement eliminates the first one. And the consequence of their argument, if the statute is followed through, is that the upstream… The unelected species disappear. Disappear. And are never heard from again. Right. I'm going to ask Mr. Ray about that. I'm sure he has an explanation. Right. And not only do they disappear, but then there is no safe harbor protection from the upstream patents. The law cannot be that way, Your Honor. Thank you. Thank you, Mr. Anansu. Mr. Ray has four plus minutes for rebuttal. Yeah, I… Mr. Ray, help me with this. I'm slow and these are difficult issues. You know, I need a little help. So be calm and just talk to me easily. Yeah. Let's assume we begin with a restriction device that separates device from method. Let's assume that the election under that restriction is to elect group one device and species B. Now, there's a species A and a species C. It's all… And there's some subspecies and what have you. Later down the road, the question arises, how do we pick up A and C? And where can we pick them up? Or is it the case that once you elect the way you did, those other species or subspecies are no longer available if they are, for example, methods rather than the original device election? Well, what happens to those subspecies methods? Well, the problem is the hypothetical you raised is not really about the restriction requirement anymore. We're now talking about some patent prosecution details, which I can't explain if I had more time. The issue, though, is when you say species A, species B, species C, are you using it like my adversary to mean devices and methods? That's what they're doing that thing correct. When you pick species C, it's got to be species C device, species C method. So that line never disappears. And if you went to the correct restriction requirement, although they are very similar, I agree. The premise of the species is premised upon you first complying with the group. And that's made clear in the restriction requirement itself. Are you saying that there's a distinction between election of species and the basic restriction requirement? Yes, a huge one. Restriction requirement is done under the statute. It's unfortunate that the examiner cited the statute for the species election. He doesn't need to cite the statute for requiring a species election. The statute is about independent and distinct inventions. That restriction requirement never disappears, regardless of our discussion on species. And does election of species relate to the absence of an allowable generic claim? That's another issue. And you pointed that out in the real equitable argument I'm hearing. In other words, if there had been a generic claim encompassing A, B, and C that was allowable, within the method or device election, that would have carried A, B, and C. Correct. The restriction requirement did not preclude the claiming of all the species. That's if no generic claim was allowed. And Judge Lori pointed that out in the questioning of my adversary. The restriction requirement makes it clear. First, you must comply with the restriction requirement between devices and methods. That never disappears. They have no argument in response to the real restriction requirement, regardless of whether you're looking at the parent or the child. The restriction requirement was the same, devices and methods. Now, when you talk species, you are no longer under 121. You now are trying to assist the examiner in his search. And the examiner is saying, what do you want me to search when you prosecute these other merits? Would you kindly tell me which species I should search first? You don't cancel the other species. That's another mistaken assumption. Those are still in the case. You make your election for search purposes, and you may be able to get the generic claim. And even if you can't get species B, you can still get a generic claim to A and C. Even if it's a method claim under a device restriction? No, you still got to comply with the method and device. So the generic doesn't help you? Yes, it does. You get a generic to A and B, a generic to A and B, but you still maintain the device method. When we say species C, we mean species C device, species C method. They can't be merged, as my adversary is doing, because that violates the fundamental dominating agreed-to restriction requirement, that device method. And what mistake he's making is that he's probably not familiar with the fact that under Rule 141, you can present multiple species when you have a generic claim. The restriction requirement did not preclude the applicant from doing anything. It was the prior art. Thank you, Your Honor. No further questions?